IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIE SELWYN, | ) CIVIL NO. 07-00294 JMS-KSC |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO AFFIRM |
| vs. | ) THE DECISION OF THE |
| | ) ADMINISTRATIVE LAW JUDGE |
| UNITED STATES ATTORNEYS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION TO AFFIRM
THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

Plaintiff Julie Selwyn ("Plaintiff") initiated this action against Defendant U.S. Attorneys ("Defendant").  She appeals the Administrative Law Judge's ("ALJ") decision denying her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff seeks a judgment reversing the ALJ's decision because of her belief that the ALJ's decision was not supported by substantial evidence.

On November 1, 2007, United States District Judge J. Michael Seabright designated the instant matter to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(B) and 636(b)(3), and Local Rule 72.4 of the

Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"). Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.

After carefully considering the written submissions and the record herein, the Court FINDS and RECOMMENDS that the ALJ's decision be AFFIRMED.

BACKGROUND

A.   Factual and Procedural Background

Plaintiff was born on September 13, 1964, and was 41 years old at the time the ALJ issued his decision.  Administrative Record dated July 19, 2007 ("AR") at 30.  She has more than a high school education, was a licensed beautician, and last worked as a hairdresser in 1992.  Id. at 36.

On June 7, 2001, Plaintiff filed applications for DIB and SSI, alleging that she became disabled on August 13, 1993 as a result of chronic fatigue syndrome and multiple chemical sensitivities.[1]  Id. at 23-24, 87.

---

[1]  Plaintiff had previously filed applications for DIB and SSI and an ALJ allowed her claims with an onset

Plaintiff testified that the symptoms of her condition, which she had suffered for 13 or 14 years, included fatigue, body pains, excessive fatigue, disorientation, headache, irritability, and inability to focus and concentrate. Id. at 37, 40. She further testified that the chemicals triggering this condition included perfumes, herbicides, pesticides, cleaning solvents, those present in supermarket aisles (i.e. soap, detergent), car fumes, gas fumes, and truck diesel fumes. Id. at 37.

Plaintiff represented that she suffered flare-ups approximately two to three times a week and that she received osculation and hydrogen peroxide treatments from one of her physicians, Dr. Clif Arrington. Id. at 38. According to Plaintiff, the purpose of these treatments was to detoxify her system

---

date of disability of July 11, 1992. AR at 23. However, because drug addiction was determined to be a contributing factor to the evaluation of Plaintiff's disability, a disability hearing officer found, upon redetermination, that Plaintiff was not disabled. Id. Plaintiff's benefits were terminated on January 1, 1997. Id. Thus, the earliest Plaintiff could have received benefits was from January 1, 1997. Id. at 24.

and in particular, to rid her body of "the heavy
metal". Id. Treatment by another physician, Dr. George
Ewing, included avoidance of the offending chemicals
and environments, as well as a prescription for Kamet.[2]
Id. at 39.

With respect to her daily routines, Plaintiff
testified that she cooked simple meals, shopped, home
schooled her son, kept an eye on her son, completed
household chores with her son's assistance, drove, and
filled gas, although she turned her head to avoid
inhaling the fumes. Id. at 41-44. During a 1994
evaluation with Dr. James Tom Greene, a licensed
psychologist, Plaintiff reported that she purchased her
own supplies, cooked, and within her own limits had no
trouble housekeeping, driving, and handling money. Id.
at 402. Although Dr. Greened smoked during Plaintiff's
evaluation, she did not complain or comment. Id. at
403.

During a 2002 evaluation with Dr. Georgia

---

[2] Based on the record, Plaintiff saw Dr. Ewing from
1993 to approximately 2006.

Carpenter, a licensed clinical psychologist, Plaintiff
was observed watering her yard and reported that she
attended college classes and church, watered plants,
did laundry, cleaned her house, completed schoolwork,
read, spent time on the internet, and dabbled in
drawing.  Id. at 28, 294, 296-97

B.   ALJ's Decision

On December 30, 2005, the ALJ issued his
decision.  The specific findings issued by the ALJ are
as follows:  1) Plaintiff was insured for DIB through
September 30, 2001; 2) Plaintiff has not engaged in
substantial gainful activity since first suffering from
her disability; 3) Plaintiff's condition is "severe"
but not severe enough to meet one of the impairments
listed in Appendix 1, Subpart, Regulations No. 4; 4)
Plaintiff's allegations are not totally credible; 5)
Plaintiff's residual function capacity ("RFC") includes
a range of sedentary work; 6) Plaintiff is unable to
perform any of her past relevant work; 7) Plaintiff is
a "younger individual"; 8) Plaintiff has more than a

5

high school education; 9) the transferability of skills
is not an issue; 10) there are a number of jobs in the
national economy that Plaintiff could perform even
though Plaintiff's limitations prevent her from
performing the full range of sedentary work; and 11)
Plaintiff was not under a disability, defined by the
Social Security Act, from January 1, 1997 to December
30, 2005.  Id. at 31-32.

In reaching his decision, the ALJ gave
significant weight to Dr. Greene's opinion that
Plaintiff was capable of working and Dr. Carpenter's
diagnosis, which indicated moderate difficulty in
occupational functioning.  Id. at 27-28.  On the other
hand, he afforded little weight to Dr. Ewing's, Dr.
Sandra Brazzel's, and Dr. Arrington's opinions.  Id. at
26-27.  Further, after considering testimonials from
Plaintiff's family and friends, the ALJ determined that
while said testimonials supported Plaintiff's
allegations of fatigue and intolerance to certain
chemicals, the record did not contain any objective

medical evidence of a debilitating disease.  Id. at 29.

Plaintiff appealed the ALJ's decision, and the Notice of Appeals Council denied her request for review.  Id. at 6-7.  Plaintiff thereafter commenced the instant action, pursuant to 42 U.S.C. § 405(g).

STANDARD OF REVIEW

The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003).  Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  To determine whether there is substantial evidence to support the ALJ's decision, a court should review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Where evidence is susceptible to more than one rational

7

interpretation, the ALJ's conclusion must be upheld. Id. The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff argues that she was unjustly denied her benefits. To be eligible for DIB or SSI, Plaintiff must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, it may only be determined that Plaintiff is under a disability "if h[er] physical or mental impairment or impairments are of such severity that he

8

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Because Plaintiff was only insured for disability benefits through September 30, 2001, she must establish a disability on or prior to that date. AR at 24, 31.

A five-step analysis is employed in evaluating disability claims.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any

9

> other substantial gainful activity in the
> national economy. If so, the claimant is
> not disabled. If not, the claimant is
> disabled.

Burch, 400 F.3d at 679.  It is the claimant's burden to prove a disability in steps one through four of the analysis.  Id. (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  Id. (citation omitted).

In applying this analysis, the ALJ found that Plaintiff satisfied steps one, two and four.  However, based on Plaintiff's RFC, as determined by the ALJ following his evaluation of the record, and the opinion of a vocational expert, the ALJ found that Plaintiff "retain[ed] the capacity for work that exists in significant numbers in the national economy."  AR at 31.[3]  It appears that Plaintiff objects to the ALJ's

_____

[3] The jobs offered as examples by the vocational expert were assembler, order clerk, and surveillance system monitor.  Id. at 31.

10

evaluation of steps four and five.

Plaintiff objects to the ALJ's decision on the following grounds:  1) the ALJ failed to give adequate weight to Dr. Arrington's, Dr. Ewing's, and Dr. Brazzel's opinions/reports; 2) the ALJ's reliance on Dr. Carpenter's and Dr. Jeffrey Akaka's diagnoses was misplaced; 3) the ALJ failed to give adequate weight to letters and reports from Plaintiff's family, friends, and acquaintances; and 4) the vocational expert, Brenda Cartwright, underestimated the seriousness of Plaintiff's condition.  The Court addresses each in turn.

A.   The ALJ did not Err in According Little Weight to
     Dr. Arrington's, Dr. Ewing's, and Dr. Brazzel's
     Opinions

Plaintiff asserts that Dr. Arrington's, Dr. Ewing's, and Dr. Brazzel's opinions support her allegation of total disability.  Defendant counters that the ALJ properly discounted these opinions because of inconsistencies, lack of objective medical support, and reliance on Plaintiff's subjective statements.  A

review of the record indicates that the ALJ did not err in giving limited weight to the opinions and/or reports of the aforementioned doctors because he offered specific and legitimate reasons for doing so.

1.   <u>Treating Physicians</u>

Pursuant to 20 C.F.R. § 404.1527(d)(2), the ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the ALJ decides not to give the opinion of a treating source controlling weight, the ALJ must consider factors such as the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion.  <u>Id.</u>

If the ALJ rejects the opinion of a treating physician, he must provide "'specific and legitimate reasons' supported by the record for so doing." <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ may properly reject a treating physician's opinion where the opinion of disability is inconsistent with noted improvement and the claimant's level of activity, not supported by the findings of any doctor, or so extreme as to be implausible.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001).  The ALJ may also reject a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole."  <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

a.   <u>Dr. Brazzel's Report</u>

The ALJ acknowledged that Dr. Brazzel's Physician Evaluation Report ("Report"), dated February 25, 2005, indicated that Plaintiff is incapable of performing sedantary work.  AR at 27.  However, he gave little weight to said Report based on representations

in a letter dated August 24, 2005, wherein Dr. Brazzel stated, among other things, that she could not offer an opinion on Plaintiff's ability to work due to the subjective nature of Plaintiff's impairment and that she had not prescribed any treatment or medication. Id. at 27; see also id. at 445 ("It is always difficult with subjective illnesses such as chronic fatigue syndrome to speculate as to her work ability."). The inconsistency between the Report and the August 24, 2005 letter serves as a specific and legitimate reason for the limited weight accorded the Report by the ALJ. Matney, 981 F.2d at 1020 (inconsistencies and ambiguities noted by the ALJ constitute specific and legitimate reasons for rejecting the opinion of a treating physician). Thus, the ALJ did not err in giving little weight to Dr. Brazzel's Report.

     b.   <u>Dr. Ewing's Opinions</u>

Similarly, the ALJ did not err in according little weight to Dr. Ewing's opinions. The ALJ noted that Dr. Ewing's "opinions appear to be based entirely

14

upon the claimant's subjective complaints."  AR at 26-
27.  Further, the ALJ observed inconsistencies in the
record:  "Although [Dr. Ewing] opined on November 1,
1993 that [Plaintiff] was unable to lift and carry
items, his examination notes from August 20, 1993 show
that she was neurologically intact and 'seems to have
no weaknesses.'"  Id. at 26.  Moreover, Dr. Ewing's
laboratory work-up of Plaintiff was normal.  Id.  The
ALJ also described other information provided by Dr.
Ewing from subsequent visits, which included
observations that Plaintiff's responses to questions
were vague and inconsistent and a determination that
Plaintiff "was not acutely ill."  Id. at 27.

     The Court finds that these are specific and
legitimate reasons, supported by the record, justifying
the limited weight given to Dr. Ewing's opinions.  Not
only are they based on Plaintiff's subjective
complaints, but Dr. Ewing's statements are inconsistent
and conclusory.  Despite Dr. Ewing's conclusions that
Plaintiff is permanently and completely disabled, there

is an absence of objective evidence to support said conclusions.  Where, as here, the ALJ found that Plaintiff's "allegations and testimony are generally credible but disproportionate to the medical evidence," it was appropriate for him to reject the opinions of Dr. Ewing, which were entirely based upon Plaintiff's subjective complaints.  Id. at 29; see also, e.g., Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ's disregard of a treating physician's opinion constituted a specific, legitimate reason because the opinion was premised on the plaintiff's subjective complaints, which the ALJ had properly discounted).

Indeed, even though Plaintiff claimed that she could not engage in substantial gainful activity and reported a host of physical symptoms and allergies to Dr. Ewing, see AR at 363-64, she testified that she cooked simple meals, shopped, home schooled her son, kept an eye on her son, completed household chores with her son's assistance, drove, and filled gas.  Id. at 41-44.  She also apparently attended college classes

and church, watered plants, did laundry, cleaned her house, completed schoolwork, read, spent time on the internet, and dabbled in drawing.  Id. at 28, 294, 296-97.  Based on this evidence, the ALJ properly accorded little weight to Dr. Ewing's opinions.

     c.  Dr. Arrington

     The ALJ did not give great weight to Dr. Arrington's Physical Evaluation Reports because they were completed under state welfare standards regarding disability and because they were not supported by his medical charts.  Id. at 27.  Dr. Arrington had opined that:  1) Plaintiff could not sustain work activity at the sedentary level in two Reports,[4] dated November 17, 1998 and March 14, 2002, and 2) Plaintiff was totally disabled, in a letter dated July 19, 1997.  Id.  The ALJ found that Dr. Arrington's medical charts did not support his conclusion that Plaintiff was totally disabled.  Id.  In particular, the ALJ cited charts

---

    [4]  Included in the record is also a Report dated March 6, 1998.  AR at 256-57.  Like the other Reports, it was completed under state welfare standards.

covering the following visits:  1) February 1997[5] -

Plaintiff was well enough to work part-time, but grew

more fatigued and then became pregnant; 2) July 30,

2001 - no objective findings in Plaintiff's blood

chemistry, etc. which can be corrected; 3) June 13,

2002 - normal physical examination.  Id. at 27.

As with Plaintiff's other treating physicians,

the Court finds that the ALJ did not err in electing

not to give great weight to Dr. Arrington's Reports.

The ALJ offered specific and legitimate reasons for

discrediting the Reports.  After reviewing the Reports

and medical charts, the Court agrees that Dr.

Arrington's conclusions were not supported by his

charts.  Therefore, the ALJ's interpretation of the

evidence was rational and his decision to give lesser

weight to Dr. Arrington's Reports were not erroneous.

See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

2005) (where the doctor's clinical notes contradicted

his statements regarding the claimant's capabilities,

--------

[5]  The record indicates that the visit was in March
of 1997.  AR at 255.

the discrepancy constitutes a clear and convincing reason for not relying on the doctor's opinion).

In sum, the ALJ carefully considered the entire record before him and offered specific and legitimate reasons for according little weight to the opinions of Dr. Arrington, Dr. Ewing, and Dr. Brazzel.  He based his decision on the substantial evidence in the record. Consequently, the Court finds that he did not err.

2.   One-Time Evaluation and/or Non-treating Physicians

Taking the record as a whole, the ALJ's decision to give little weight to Dr. Arrington's, Dr. Ewing's, and Dr. Brazzel's opinions was further justified because he found other medical evidence and opinions to be more persuasive.  Although the ALJ did not specify the degree of weight accorded to these opinions, it is clear he relied upon them in making his decision about Plaintiff's RFC.

a.   Dr. Greene

Dr. Greene conducted a psychological examination of Plaintiff on August 9, 1994, at the

19

request of the state disability discrimination service.
Id. He opined that she was capable of working.  Id. at
28, 405 (finding Plaintiff "capable of significant part
or full time competitive employment in a variety of job
settings," but noting that "some attention would
probably have to be given to her experience of chemical
sensitivities").  He arrived at this conclusion in part
because of her representations that she lived alone and
was able to engage in housekeeping, drive, handle
money, and cook.  Id. at 27, 402.  He further found
that there was no restriction in daily activities and
interests, but recognized that Plaintiff suffered from
some loss of energy.  Id. at 405.  Moreover, he
reported that

> there is a very significant psychological
> component to her chronic fatigue syndrome
> symptoms . . . she is subtly manipulative
> of others to give her some type of special
> considerations in contact with life and
> challenging her own abilities . . . .
> there are some psychological distortions
> which would correlate with a psychological
> component to depression, loss of energy,
> various sensitivities, etc.

Id. at 404.

The ALJ cited to these findings and also
pointed out test results in Dr. Greene's report, which
suggested that Plaintiff did not suffer from organic
brain syndrome or a learning disability.  Id. at 28,
403.  The ALJ noted as significant the fact that
Plaintiff did not complain or make any comment when Dr.
Greene smoked in her presence.  Id. at 27-28.  It
appears that the ALJ gave significant weight to Dr.
Greene's opinion because it was consistent with the
objective medical records and the test results from Dr.
Greene's evaluation of Plaintiff.  The Court finds that
the ALJ did not err in so doing.

        b.   Other Evaluations

        Additional evaluations and assessments were
conducted, some with an examination of Plaintiff and
others based on the record.  These evaluations are more
appropriately the subject of the next section.

B.   The ALJ's reliance on Dr. Carpenter's and Dr.
     Akaka's Diagnoses was not Erroneous

        The ALJ did not indicate what degree of weight
he accorded Dr. Carpenter's or Dr. Akaka's

psychological evaluation of Plaintiff, but it appears
that Plaintiff believes the evaluations support her
claim of total disability.[6]   Dr. Carpenter evaluated
Plaintiff on March 12, 2002, at the request of the
state disability determination service.   Id. at 28.
According to Dr. Carpenter, and as noted by the ALJ,
Plaintiff reported that she experienced flares of
fatigue every month or sometimes more frequently.   Id.
at 28, 295.   Yet Plaintiff was able to:   attend
college, do housecleaning, do laundry, water plants, do
schoolwork, attend church on the weekends, spend time
on the internet, dabble in drawing, and care for her
pre-school aged son.   Id. at 28, 294, 296-97.

Dr. Carpenter diagnosed Plaintiff with
adjustment disorder and assessed her with a GAF score
of 55, which "indicat[es] moderate difficulty in
occupational functioning."   Id. at 28.   She also
offered the following prognosis:   1) ability to
understand simple directions - poor; 2) ability to

---

[6]   Plaintiff's Brief merely summarizes selective
portions of the evaluations.   Pl.'s Opening Br. at 6-7.

recall simple directions - poor for most directions,
but adequate if visually presented and she could learn
information over time or follow written directions; 3)
ability to sustain concentration - poor; 4) ability to
relate and get along with others - affected by her
extreme sensitivity to chemicals and fatigue, but would
have no difficulty if these were overcome; 5) ability
to adapt - poor, but adequate if she overcame her
sensitivities; 6) ability to handle finances -
adequate; 7) ability to work independently - adequate;
8) ability to handle low stress situations - poor; 9)
likelihood of improvement in 12 months - poor.  Id. at
298.

The Court finds that the ALJ's reliance on this
evaluation for the proposition that Plaintiff would
have moderate difficulty in occupational functioning
was not erroneous or improper.  When taken together
with the other evidence before the ALJ, this supports
the conclusion that Plaintiff could engage in some type
of sedentary work.

As with Dr. Carpenter's evaluation, it appears that the ALJ relied upon Dr. Akaka's (state agency medical consultant referenced in the ALJ's decision) assessment of the record and opinion that Plaintiff was capable of sustaining simple, repetitive type of work despite her moderate limitations.  Id. at 28.  Dr. Akaka completed a Mental Residual Function Capacity Assessment on April 12, 2002.  Id.  He commented that "[w]hile claimant may have physical limitations, her range of activities within those limitations is fairly extensive and suggest that her credibility may not be entirely 100%."  Id. at 324.

Based on a review of the record, it is clear that the ALJ's reliance on Dr. Akaka's and Dr. Carpenter's evaluations was not misplaced.  He accurately represented the findings therein and the evaluations support his assessment of Plaintiff's RFC. As such, the Court finds that the ALJ's determination regarding Plaintiff's RFC and his decisions regarding the weight of the evidence are supported by substantial

evidence.

C.   The ALJ did not Err in According Little Weight to
     Letters and Reports from Plaintiff's Family,
     <u>Friends, and Acquaintances</u>

        Plaintiff contends that testimonials of her
friends, family, and acquaintances confirm her
allegations of disability.  Defendant argues that the
ALJ properly discounted the testimonials as
inconsistent with the objective medical evidence
because he properly discounted Plaintiff's credibility
based on the same reasoning.

        "While an ALJ must take into account lay
witness testimony about a claimant's symptoms, the ALJ
may discount that testimony by providing 'reasons that
are germane to each witness.'"  <u>Greger v. Barnhart</u>, 464
F.3d 968, 972 (9th Cir. 2006) (quoting <u>Dodrill v.
Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)); <u>see also
Bayliss</u>, 427 F.3d at 1218 (citing <u>Lewis v. Apfel</u>, 236
F.3d 503, 511 (9th Cir. 2001)) ("An ALJ need only give
germane reasons for discrediting the testimony of lay
witnesses.").  One such reason is inconsistency with

25

medical evidence.  Id. (citation omitted).

In the present case, the ALJ considered the written testimonials from Plaintiff's friends, family, and acquaintances.  AR at 29.  He found that they described Plaintiff as suffering from chronic fatigue, but also managing to care for herself and her son.  Id. Although the ALJ determined that the testimonials offered some support for Plaintiff's allegations, he concluded that "the record contains no objective medical evidence of a debilitating disease."  Id. Specifically, the ALJ cited medical test results that were not attributable to her impairments.  Id.  He also noted that her only limitation resulted from fatigue and intolerance of chemicals.  Id.  Finally, he reiterated that Plaintiff engaged in a number of activities that were consistent with substantial gainful activity.[7]  Id.

The ALJ offered a legitimate reason  - inconsistency with the medical evidence - for rejecting

---

[7]  For specific activities, see Section A.1.b.

the testimonials of Plaintiff's friends, family, and acquaintances.   Accordingly, the Court finds that the ALJ's decision was supported by substantial evidence and was not error.

D.   The ALJ did not Err in Relying on Brenda
     Cartwright's Opinion

        Plaintiff posits that Ms. Cartwright, the vocational expert, underestimated the seriousness and resulting limitations of Plaintiff's conditions. However, whether or not Ms. Cartwright underestimated the severity of Plaintiff's condition is not an issue before this Court.[8]   The Court's review is limited to

---

        [8]   Plaintiff believes that Ms. Cartwright did not consider Plaintiff's chronic fatigue syndrome and multiple chemical sensitivity in responding to the ALJ's interrogatories.   Pl's Opening Br. at 4. However, Ms. Cartwright read exhibits from the case pertaining to Plaintiff's vocational background and RFC.   AR at 189.

        To the extent Plaintiff's arguments can be construed to challenge the hypothetical questions in the interrogatories for failing to include additional limitations, the Court finds that the ALJ did not err in excluding additional limitations, as he was only required to include limitations that were credible and supported by substantial evidence.   See Bayliss, 427 F.3d at 1217 (ALJ's reliance on testimony of vocational expert is proper where the hypothetical presented to

27

whether Ms. Cartwright's opinion, when taken together with the other evidence before the ALJ, supports his decision to deny Plaintiff benefits.  Given this Court's determination that substantial evidence supported the ALJ's findings regarding Plaintiff's RFC, the ALJ appropriately relied on Ms. Cartwright's answers to interrogatories, which addressed hypothetical RFCs, the second of which is identical to the RFC ultimately assessed for Plaintiff.  <u>Compare</u> <u>id.</u> at 192 <u>with</u> <u>id</u>. at 29.  Thus, the ALJ did not err in considering Ms. Cartwright's opinion.

After considering Plaintiff's objections to the ALJ's decision, and carefully reviewing the record, the Court finds that the ALJ did not commit reversible error and that his decisions were supported by substantial evidence.

---

the vocational expert "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record"); <u>Osenbrock v.</u> <u>Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ did not err by failing to include all alleged limitations in the hypothetical questions because the claimant failed to produce evidence of the limitations).

CONCLUSION

Based on the foregoing, the Court finds that the ALJ's determination that Plaintiff was not disabled within the meaning of the Social Security Act was supported by substantial evidence and that the ALJ applied the proper legal standards.  Accordingly, the Court FINDS and RECOMMENDS that the ALJ's decision be AFFIRMED.

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawaii, March 3, 2008.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 07-00294 JMS-KSC; SELWYN V. U.S. ATTORNEYS; FINDINGS AND RECOMMENDATION TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

29